**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WINNIE VIRIDIANA,
                        *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                        *Respondent.*

No. 06-73335

Agency No.
A095-304-033

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 3, 2010—Pasadena, California

Filed January 19, 2011

Before: Betty B. Fletcher and Richard A. Paez,
Circuit Judges, and Donald E. Walter,* District Judge.

Opinion by Judge Paez

---

*The Honorable Donald E. Walter, Senior District Judge for the U.S.
District Court for Western Louisiana, Shreveport, sitting by designation.

**COUNSEL**

Gihan L. Thomas, Los Angeles, California, for petitioner Winnie Viridiana.

Peter D. Keisler, Assistant Attorney General Civil Division, Richard M. Evans, Assistant Director, Allen W. Hausman, Senior Litigation Counsel Office of Immigration Litigation Civil Division, Washington, D.C., for respondent Eric H. Holder Jr., United States Attorney General.

## OPINION

PAEZ, Circuit Judge:

Winnie Viridiana, an Indonesian citizen of Chinese descent, petitions for review of the Board of Immigration Appeals ("BIA") order affirming an Immigration Judge's ("IJ's") denial of her claims for asylum and withholding of removal. We have jurisdiction under 8 U.S.C. § 1252, and we grant the petition and remand.

The principal issue that we address in this appeal is whether the IJ correctly determined that Viridiana's asylum application was untimely. An alien seeking asylum must file an application within one year of arrival in the United States. 8 U.S.C. § 1158(a)(2)(B); 8 C.F.R. § 208.4(a)(2)(i)(A). Viridiana filed her application after she had been in the country for one year and three months. The IJ denied Viridiana's asylum application as untimely because he concluded that she had not established an exception to the one-year filing requirement, and the BIA affirmed. Because the relevant historical facts are undisputed, we have jurisdiction to review the IJ's conclusion that Viridiana's asylum application was untimely without exception. *See Ramadan v. Gonzales*, 479 F.3d 646, 650 (9th Cir. 2007). Conducting such review, we conclude that Viridiana's delay in filing her asylum application was due to the "extraordinary circumstance" of fraudulent deceit by an immigration consultant, and that this circumstance directly related to her failure to file the application within the one-year deadline. 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 208.4(a)(5).

Because Viridiana has established "extraordinary circumstances" for purposes of 8 U.S.C. § 1158(a)(2)(D), and filed her asylum application within a reasonable time after such circumstance, we further conclude that Viridiana's asylum application was untimely but with exception. We therefore grant the petition and remand for consideration of the merits of her asylum application. With respect to Viridiana's claim for withholding of removal, we grant the petition and remand for further consideration in light of our recent decision in *Wakkary v. Holder,* 558 F.3d 1049 (9th Cir. 2009).[1]

## I.   Background

Viridiana is an Indonesian citizen of Chinese descent. Viridiana testified that when she lived in Indonesia, she was harassed, robbed, attacked, and sexually assaulted on account of her Chinese ethnicity. On one occasion, Viridiana was the only Chinese-Indonesian person riding on a bus. Four Indonesian men on the bus targeted only her, dragged her off the bus at knife-point, robbed her, attempted to rape her, and cut her with the knife as she struggled to escape. On another occasion, she was again targeted by Indonesian men while riding public transportation. The men attacked and attempted to rob Viridiana. According to Viridiana, in both instances she was the only Chinese person around and the Indonesian men singled her out due to her Chinese ethnicity. Viridiana testified that she did not report the two incidents to the police because the police were hostile to ethnic Chinese-Indonesians. Following these incidents, Viridiana became depressed, feared leaving her home, and had to be escorted to and from her office by her father.

Viridiana fled Indonesia and entered the United States on January 30, 2001, with a visitor's visa. Her visa authorized

---

[1]In her initial application and before the agency, Viridiana sought relief under the Convention Against Torture. She has, however, abandoned that claim before our court. Accordingly, we do not address it.

her to remain in the country until July 29, 2001. In May 2001, she consulted with Benny Muaja of BM & Associates ("BM"), an immigration consultant and court-certified Indonesian interpreter, to assist her in filing an application for extension of her nonimmigrant status. She also sought his assistance in filing an I-589 application for asylum and withholding of removal. Viridiana learned of BM from an advertisement in a local Indonesian magazine. Viridiana paid Muaja $1300 (in cash installments) for his assistance in filing her visa extension and asylum applications. Viridiana understood that Muaja was not a lawyer and that BM was not a law firm.

In August 2001, Muaja, acting on behalf of Viridiana, submitted an application to extend Viridiana's visa. In December 2001, the Immigration and Naturalization Service denied her application.

In July 2001, Viridiana began calling Muaja to inquire about the status of her asylum application. In her declaration submitted at the hearing before the IJ, she stated:

> Initially, Mr. Muaja would not return my calls. Later, when confronted, Mr. Muaja did not answer my questions directly about my request for proof of filing. Whenever I called, Mr. Muaja would make an appointment, but when I appeared for the appointment, Mr. Muaja would say that he had not time to see me. This happened five or six times from July 2001 until March 2002.

Despite Viridiana's frequent calls and numerous appointments, Muaja never filed an application for asylum on Viridiana's behalf.

In March 2002, Viridiana contacted the law offices of Warmuth & Niu. In April 2002, with the aid of her new Warmuth & Niu attorney, Viridiana filed her asylum application, which

included a request for withholding of removal and relief under the Convention Against Torture ("CAT"). By that point, Viridiana had been in the country for one year and three months, and her asylum application was three months late.

On July 12, 2002, the Immigration and Naturalization Service issued to Viridiana a Notice to Appear for removal proceedings in immigration court. The IJ held a hearing on her application for asylum and other forms of relief. Viridiana testified at the hearing. On October 10, 2003, the IJ delivered his oral decision denying Viridiana's asylum application as untimely. Because the one-year time bar does not apply to claims for withholding of removal and relief under CAT, the IJ proceeded to address those claims on the merits. With respect to both of these claims, however, the IJ found that Viridiana failed to meet her burden of proof to warrant relief. Accordingly, the IJ denied her application for withholding of removal and relief under CAT. Viridiana filed a timely appeal to the BIA. In June 2006, the BIA adopted and affirmed the IJ's decision. Viridiana timely petitioned for review.

## II.   Standard of Review

The BIA adopted and affirmed the IJ's decision pursuant to *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (B.I.A. 1994). "[W]here the BIA cites its decision in *Burbano* and does not express disagreement with any part of the IJ's decision, the BIA adopts the IJ's decision in its entirety." *Abebe v. Gonzales*, 432 F.3d 1037, 1040 (9th Cir. 2005) (en banc). We therefore review the IJ's decision directly. *Id.*

The proper standard of review in immigration proceedings depends on the nature of the decision under review. *See Manzo-Fontes v. INS*, 53 F.3d 280, 282 (9th Cir. 1995). Factual determinations are reviewed for substantial evidence. *See Camposeco-Montejo v. Ashcroft*, 384 F.3d 814, 818 (9th Cir. 2004). Under this deferential standard, the IJ's determination must be upheld unless the petitioner can show that a reason-

able fact finder would have been compelled to reach a different conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Questions of law are reviewed de novo. *Rodriguez-Lariz v. INS*, 282 F.3d 1218, 1222 (9th Cir. 2002). The IJ did not make an explicit adverse credibility finding, and therefore we take Viridiana's testimony as true and further corroboration is not required. *See Kataria v. INS*, 232 F.3d 1107, 1113-14 (9th Cir. 2000).

## III.  Discussion

**[1]** As noted above, under 8 U.S.C. § 1158(a)(2)(B), an alien seeking asylum must file an application within one year of arrival in the United States. *See* 8 C.F.R. § 208.4(a)(2)(i)(A). There are two exceptions to this rule: late applications may be considered "if the alien demonstrates to the satisfaction of the Attorney General either [1] the existence of changed circumstances which materially affect the applicant's eligibility for asylum or [2] extraordinary circumstances relating to the delay in filing an application." 8 U.S.C. § 1158(a)(2)(D) (alterations added); 8 C.F.R. §§ 208.4(a)(4), (5). Viridiana argues that she is eligible for relief under the later exception, "extraordinary circumstances," due to the mishandling of her asylum application by an immigration consultant. The IJ construed Viridiana's argument as a claim of ineffective assistance of counsel and determined that although ineffective assistance of counsel is one of the enumerated "extraordinary circumstances," which will excuse the untimely filing of an asylum application, *see* 8 C.F.R. § 208.4(a)(5)(iii), Viridiana failed to demonstrate that she qualified for the exception.

The issue of whether a petitioner has demonstrated "extraordinary circumstances" warranting equitable tolling is a mixed question of fact and law and, therefore, subject to our review. *See Husyev v. Mukasey*, 528 F.3d 1172, 1181 (9th Cir. 2008) (holding that petitioner's claim to "extraordinary circumstances" was a question of law and that we therefore have

jurisdiction to review it); *accord Dhital v. Mukasey*, 532 F.3d 1044, 1049-52 (9th Cir. 2008).

**[2]** The government argues that, because relevant facts are in dispute, we lack jurisdiction to review the BIA's determination that Viridiana's asylum application is time barred. *See Ramadan*, 479 F.3d at 650. We disagree. The only facts that might be considered in dispute were the terms of Viridiana's contract with Muaja. Indeed, the IJ noted Viridiana's inability to produce a copy of her contract as a weakness in Viridiana's claim. Yet, the government presented no competing evidence concerning the terms of the contract and "cited no evidence that can support a finding that [Viridiana's] version of the facts was incredible, nor do we find any. A reasonable fact finder would therefore be compelled to find [Viridiana's] story credible." *Monjaraz-Munoz v. INS*, 327 F.3d 892, 897 (9th Cir. 2003) (citation omitted). The IJ ultimately found Viridiana credible and proceeded to consider the merits of her withholding of removal claim. Because the relevant historical facts are undisputed, we have jurisdiction to consider whether Viridiana demonstrated "extraordinary circumstances" that would excuse her untimely asylum application. *See Ramadan*, 479 F.3d at 648; *see also, e.g., Lin v. Holder*, 610 F.3d 1093, 1096 (9th Cir. 2010) (concluding that the facts were not in dispute and reviewing an IJ's determination that the alien's asylum application was untimely); *Mutuku v. Holder*, 600 F.3d 1210, 1212 (9th Cir. 2010) (reviewing an alien's claim that "extraordinary circumstances" excused her failure to meet the one-year filing deadline for filing an application for asylum).

## A.   Asylum

Viridiana admits she filed her asylum application almost three months late. Viridiana argues, however, that the IJ misconstrued her claimed "extraordinary circumstance" as one of ineffective assistance of counsel under 8 C.F.R. § 208.4(a)(5)(iii). Viridiana argues that she did not allege

ineffective assistance of counsel; she alleged that she was defrauded by a non-attorney immigration consultant. Section 208.4(a)(5)(iii) does not strictly encompass that claim. Thus, Viridiana argues, the IJ should have considered whether the circumstances that resulted in her delayed filing of her asylum application as a whole were sufficiently "extraordinary." Applying this broad analysis, Viridiana argues that she qualifies for an exception to the one-year filing requirement due to "extraordinary circumstances" as a result of the fraudulent inaction and misrepresentations of immigration consultant Muaja. *See* 8 U.S.C. § 1158(a)(2)(D).

**[3]** Under the governing regulation, the term "extraordinary circumstances" "refer[s] to events or factors directly related to the failure to meet the 1-year deadline," and "may excuse the failure to file within the 1-year period as long as the alien filed the application within a reasonable period given those circumstances." 8 C.F.R. § 208.4(a)(5). The regulation goes on to explain that such "extraordinary circumstances" "may include but are not limited to" the following:

> (i) Serious illness or mental or physical disability, including any effects of persecution or violent harm suffered in the past, during the 1-year period after arrival;

> (ii) Legal disability (e.g., the applicant was an unaccompanied minor or suffered from a mental impairment) during the 1-year period after arrival;

> (iii) Ineffective assistance of counsel, provided that:

>> (A) The alien files an affidavit setting forth in detail the agreement that was entered into with counsel with respect to the actions to be taken and what representations counsel did or did not make to the respondent in this regard;

(B) The counsel whose integrity or compe-
tence is being impugned has been informed
of the allegations leveled against him or her
and given an opportunity to respond; and

(C) The alien indicates whether a complaint
has been filed with appropriate disciplinary
authorities with respect to any violation of
counsel's ethical or legal responsibilities,
and if not, why not;

(iv) The applicant maintained Temporary Protected
Status, lawful immigrant or nonimmigrant status, or
was given parole, until a reasonable period before
the filing of the asylum application;

(v) The applicant filed an asylum application prior to
the expiration of the 1-year deadline, but that appli-
cation was rejected by the Service as not properly
filed, was returned to the applicant for corrections,
and was refiled within a reasonable period thereafter;
and

(vi) The death or serious illness or incapacity of the
applicant's legal representative or a member of the
applicant's immediate family.

8 C.F.R. § 208.4(a)(5).

Here, the IJ construed Viridiana's "extraordinary circum-
stances" claim as a claim of ineffective assistance of counsel,
citing 8 C.F.R. § 208.4(a)(5)(iii). The IJ concluded that based
on her claim of ineffective assistance of counsel, Viridiana
did not qualify for the exception and her asylum application
was therefore untimely. The IJ explained that Viridiana's
claim of ineffective assistance of counsel failed for two rea-
sons: (1) because Viridiana did not claim that Muaja held
himself out as an attorney, citing *Lopez v. INS*, 184 F.3d 1097

(9th Cir. 1999) and *Varela v. INS*, 204 F.3d 1237 (9th Cir. 2000); and (2) because she did not file anything by way of complaint with the appropriate disciplinary authorities, implicitly relying on *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (B.I.A. 1988). Both grounds on which the IJ relied to reject Viridiana's claim relate to the IJ's incorrect character-ization of Viridiana's "extraordinary circumstance" as that of ineffective assistance of counsel. Instead, Viridiana alleged the "extraordinary circumstance" of immigration consultant fraud, a claim which we conclude is distinct from ineffective assistance of counsel.

With respect to the first reason given by the IJ for rejecting Viridiana's claim, i.e., the fact that Muaja did not hold him-self out as an attorney, the IJ incorrectly relied on *Lopez* and *Varela*. In *Lopez*, we concluded that the statute of limitations to reopen deportation proceedings under 8 U.S.C. § 1252b(c)(3) (1994) was equitably tolled where the alien's late motion was the result of the deceptive actions of an immi-gration consultant, i.e., a non-attorney, posing as an attorney. *See Lopez*, 184 F.3d at 1100. After *Lopez*, in *Varela*, we con-sidered whether the fraudulent inaction of a non-attorney, who falsely held himself out as the assistant to an attorney, excused—on equitable tolling grounds—an untimely second motion to reopen. *See Varela*, 204 F.3d at 1240. We con-cluded that it did. *Id.*; *see also Fajardo v. INS*, 300 F.3d 1018, 1021 (9th Cir. 2002) (citing *Lopez* and *Varela* and holding that the limitation period for petitioner's motion to reopen "must be tolled until [petitioner] was aware of the harm resulting from" the non-attorney immigration consultant's fraudulent action). *Lopez* and *Varela* are inapplicable to Viridiana's case because she neither alleges ineffective assis-tance of counsel nor seeks equitable tolling.

We have considered allegations of fraudulent representa-tion by a non-attorney immigrant consultant in another con-text, which was not cited by the IJ in its decision, but which arguably relates to the IJ's reasoning. Under 8 U.S.C.

§ 1229a(b)(5)(C)(I), an alien who is ordered removed in absentia due to a failure to appear at his or her removal hearing may allege "exceptional circumstances." We have concluded that one such "exceptional circumstance," warranting reopening of an alien's in absentia order of removal, is ineffective assistance of counsel. *See, e.g., Reyes v. Ashcroft*, 358 F.3d 592, 596 (9th Cir. 2004) (considering an alien's claim that he suffered the "exceptional circumstance" of ineffective assistance of counsel warranting relief from an in absentia removal order pursuant to 8 U.S.C. § 1229a(b)(5)(C)(i)). We have extended this principle to actions of an attorney's agent. In *Monjaraz-Munoz*, we held that an alien's reasonable reliance on an attorney's agent, which resulted in the alien's failure to appear at his deportation hearing, amounted to an "exceptional circumstance." 327 F.3d at 897-98. Thereafter, however, we concluded that reliance upon the advice of an immigration consultant—who the petitioner knew was not an attorney and who was not the actual or purported agent or assistant of an attorney—could not qualify as an "exceptional circumstance" under the rubric of ineffective assistance of counsel under 8 U.S.C. § 1229a(b)(5)(C)(i). *See Hernandez v. Mukasey*, 524 F.3d 1014, 1020 (9th Cir. 2008).

This line of cases is also inapplicable. Both *Monjaraz-Munoz* and *Hernandez* concerned an alien's claim of ineffective assistance of counsel in the context of an in absentia removal order. *See Monjaraz-Munoz*, 327 F.3d at 894, 896; *Hernandez*, 524 F.3d at 1017. In these cases, the alien seeking relief alleged an "exceptional circumstance" under 8 U.S.C. § 1229a(b)(5)(C)(i). The present case, by contrast, concerns the timeliness of Viridiana's application for asylum, a process governed by 8 U.S.C. § 1158 and 8 C.F.R. § 208.4(a)(2).[2]

---

[2]Under 8 U.S.C. § 1229a, an alien who, after written notice, fails to appear at a removal proceeding can be "ordered removed in absentia," and such an order will only be rescinded if the alien demonstrates that the failure to appear was because of "exceptional circumstances." Under 8 U.S.C. § 1158, an alien's tardy application for asylum may be considered if the alien demonstrates "extraordinary circumstances." *See* 8 C.F.R. § 1208.4(a)(5).

**[4]** Although both 8 U.S.C. § 1229a as interpreted by this court, and 8 U.S.C. § 1158 as implemented by 8 C.F.R. 208.4(a)(5), recognize an exception for ineffective assistance of counsel, the exceptions are not equally easy to satisfy, and "exceptional circumstances" are distinct from "extraordinary circumstances." *See, e.g., Reyes*, 358 F.3d at 596 (9th Cir. 2004) (considering the "exceptional circumstance" of ineffective assistance of counsel under 8 U.S.C. § 1229a(b)(5)(C)(i)); *Tamang v. Holder*, 598 F.3d 1083, 1089 (9th Cir. 2010) (considering the "extraordinary circumstance" of ineffective assistance of counsel as defined by 8 § C.F.R. 208.4(a)(5)). Although this distinction might seem inconsequential as a matter of common parlance, these terms are defined differently in the relevant statutes and regulations, and the "exceptional circumstances" standard is more difficult to satisfy. *Compare* 8 U.S.C. § 1229a(e)(1) (defining "exceptional circumstances" as "circumstances (such as battery or extreme cruelty to the alien . . . *but not including less compelling circumstances) beyond the control of the alien*." (emphasis added)), *with* 8 C.F.R. § 208.4(a)(5) (defining "extraordinary circumstances" to include, for example, an error on an initial application, and requiring only that the circumstances not be "intentionally created" by the alien). Thus, even if Viridiana would not be able to claim an "exceptional circumstance" under 8 U.S.C. § 1229a on the basis of fraud by an immigration consultant who she understood was a non-attorney, she could still show an "extraordinary circumstance" on the same basis for purposes of 8 U.S.C. § 1158(a)(2)(D) and 8 C.F.R. § 208.4(a)(5). Therefore, the *Lopez* line of cases, which concern equitable tolling, and the cases arising under 8 U.S.C. § 1229a, which concern in absentia removal orders, are not dispositive of Viridiana's claim.

**[5]** With respect to the IJ's second ground for rejecting Viridiana's statutory tolling argument, the IJ faulted Viridiana for not fully complying with the procedures for stating a prima facie case of ineffective assistance of counsel as set

forth by the BIA in *Matter of Lozada*, 19 I. & N. Dec. at 639[3] ; *see also* 8 C.F.R. § 208.4(a)(5)(iii) (listing the same three procedural requirements under the "extraordinary circumstance" of ineffective assistance of counsel). Again, the IJ's incorrect characterization of Viridiana's "extraordinary circumstance" as that of ineffective assistance of counsel resulted in an attempt to hold her claim up to ill-fitting standards. *Matter of Lozada* concerns an allegation of deficient assistance by an attorney. The third requirement under *Matter of Lozada* is that the alien report to the "appropriate disciplinary authorities . . . any violation of *counsel's* ethical or legal responsibilities." 19 I. & N. Dec. at 639. Here, Viridiana was never under the impression that Muaja was "counsel," nor was there an obvious disciplinary authority, analogous to a bar association, to whom she could have reported Muaja's fraudulent actions. It was error to require Viridiana to comply with *Matter of Lozada* when she sought an exception under 8 U.S.C. § 1158 and 8 C.F.R. § 208.4(a)(5) for the circumstance of immigration consultant fraud, not ineffective assistance of counsel.

Although the IJ construed Viridiana's claim of "extraordinary circumstances" as an ineffective assistance of counsel claim, Viridiana herself did not. Rather, she argued that she was entitled to statutory tolling for the "extraordinary circumstance" of fraud by an immigration consultant. In fact, in her

---

[3]*Lozada*'s procedural requirements are:

> The alien files an affidavit setting forth in detail the agreement that was entered into with counsel with respect to the actions to be taken and what representation counsel did or did not make to the respondent in this regard; (b) The counsel whose integrity or competence is being impugned has been informed of the allegations leveled against him or her and given an opportunity to respond; and (c) The alien indicates whether a complaint has been filed with appropriate disciplinary authorities with respect to any violation of counsel's ethical or legal responsibilities, and if not, why not.

19 I. & N. Dec. at 639.

brief to the BIA, Viridiana expressly argued that the IJ "cited an immaterial portion of the Code of Federal Regulations," namely, 8 C.F.R. § 208.4(a)(5)(iii), which refers to the "extraordinary circumstance" of ineffective assistance of counsel. Viridiana further explained in her appeal to the BIA that:

> [The IJ] noted that ineffective assistance of counsel constitutes an "extraordinary circumstance" exception which will excuse the untimely filing of an asylum application under 8 C.F.R. Section 209.4(a)(5)(iii) but that [Viridiana] failed to take the necessary procedural steps to support such a claim [i.e. the *Lozada* steps]. Those steps are inapplciable to this case because BM is not a law firm, Muaja is not an attorney, and BM and Muaja did not represent themselves as such.

**[6]** We agree that the IJ misconstrued Viridiana's claim when he interpreted it as an ineffective assistance of counsel claim. Irrespective of whether Viridiana can claim ineffective assistance of counsel, Viridiana unequivocally claimed "extraordinary circumstances" on the basis of immigration consultant fraud. Notably, this ground for establishing extraordinary circumstances under 8 U.S.C. § 1158(a)(2)(D) is not precluded by the governing regulation. As noted above, 8 C.F.R. § 208.4 lists six circumstances that may be "extraordinary." The regulation is clear that "extraordinary circumstances" "may include but are not limited" to the six circumstances that are listed, and that the list is not exhaustive. 8 C.F.R. § 208.4. The preamble to the regulation implementing the "extraordinary circumstances" exception to the one-year bar further explains that "[t]he lists [of extraordinary circumstances] merely provide *examples* of circumstances that might result in a tardiness being excused." 65 Fed. Reg. 76,124 (2000) (emphasis added). We therefore consider whether Viridiana has successfully supported her claim of an "extraordinary circumstance" due to immigration consultant fraud, an unenumerated circumstance.

Here, Viridiana testified that Muaja charged her $1300 to file her application to extend her visa and prepare her asylum application, which she paid in cash installments. Virdiana testified that she chose to use Muaja's services because he spoke Indonesian, he had a reputable looking advertisement in a magazine, and she believed he could help her file her asylum application. After Viridiana's application to extend her visa was denied, Viridiana diligently phoned Muaja to check on the status of her asylum application. She testified that from July 2001 to March 2002, she called Muaja five or six times requesting proof of filing. Each time she phoned, Muaja would make an appointment, but then when she appeared for her appointment, he would say that he had no time to see her. As Viridiana would later learn, Muaja never filed an asylum application on her behalf. Finally, in March 2002, three months after her visa extension had been denied, Viridiana sought the assistance of a law firm, which helped her file her application in April 2002.

**[7]** We conclude that Muaja's actions were fraudulent, that they directly related to Viridiana's failure to file her application within the one-year deadline, and that Viridiana filed her application within a reasonable period of time after learning of Muaja's deceit. *See* 8 C.F.R. § 208.4(a)(5). Muaja charged Viridiana a significant sum, one that would lead a reasonable person, and certainly a refugee seeking asylum, to reasonably believe Muaja's assurances that he would provide assistance and follow-through on his promise to complete and file her asylum application. Furthermore, Muaja submitted Viridiana's visa extension application as agreed, and Muaja gave Viridiana no indication that he would thereafter not complete the remainder of their agreement and also file her asylum application. Indeed, Viridiana's diligent calls put Muaja on notice that Viridiana expected him to file her application. Viridiana set up at least five appointments to meet with Muaja and showed up at his office each time, only to be turned away. In sum, Muaja took advantage of Viridiana's vulnerable posi-

tion, and he fraudulently charged her and misled her. His fraud directly caused her asylum application to be filed late.

**[8]** For her part, Viridiana reasonably relied on the assurances of Muaja, an individual who spoke her native language and who held himself out as a member of an organization, i.e., BM, that regularly prepared asylum applications. The "extraordinary circumstance" of immigration consultant fraud is one that Viridiana did not "through [ ] her own action or inaction" create, and the circumstance was "directly related to [Viridiana's] failure to file the application within the 1-year period." 8 C.F.R. § 208.4(a)(5). Viridiana repeatedly sought proof of filing from Muaja both over the phone and by making appointments with him and showing up at his office. Roughly three months passed from the time the BIA denied Viridiana's request to extend her status in December 2001 to the time she abandoned her attempt to work with Muaja and sought out the services of a law firm. During this time, Viridiana had attempted contact with Muaja, and her delay in filing her asylum application, which ultimately resulted in her application being three months late, "was reasonable under the circumstances." 8 C.F.R. § 208.4(a)(5).

**[9]** The immigration consultant fraud Viridiana experienced, and which caused her asylum application to be untimely, constitutes an "extraordinary circumstance" warranting statutory tolling of her asylum application deadline under § 1158(a)(2)(D) and 8 C.F.R. § 208.4(a)(5). We therefore grant Viridiana's petition, and remand her asylum claim to the agency for consideration on the merits.

## B.   Withholding of removal

**[10]** Viridiana argues that she is eligible for withholding of removal under 8 U.S.C. § 1231(b)(3).[4] To qualify for with-

---

[4]As noted above, the one-year deadline applies only to asylum applications, and, therefore, we have jurisdiction to review the agency's final order denying withholding of removal. *See Shire v. Ashcroft*, 388 F.3d 1288, 1294 (9th Cir. 2004).

holding of removal, an alien must either establish past perse-cution on account of at least one of the protected grounds, 8 C.F.R. § 1208.16(b)(1), or "demonstrate that it is more likely than not that he would be subject to persecution on one of the specified grounds." *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001) (internal quotation marks omitted). "This clear probability standard for withholding of removal is more strin-gent than the well-founded fear standard governing asylum." *Id.* at 888 (internal quotation marks and citation omitted). The "standard has no subjective component, but, in fact, requires objective evidence that it is more likely than not that the alien will be subject to persecution upon deportation." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430 (1987). In *Wakkary*, 558 F.3d at 1064-65, we extended our holding in *Sael v. Ashcroft*, 386 F.3d 922 (9th Cir. 2004) to claims for withholding of removal, concluding that one's membership in a disfavored group is pertinent in determining whether an alien is eligible for such relief.

**[11]** Here, the IJ found that Viridiana was not eligible for withholding of removal, reasoning that her two attacks did not rise to the level of persecution and that she failed to demon-strate that persecution on account of her ethnicity was "more likely than not" in the event of her return. *Al-Harbi*, 242 F.3d at 888. Neither the IJ nor the BIA, however, had the benefit of our opinion in *Wakkary* when it ruled on and reviewed the merits of Viridiana's claim for withholding of removal. In light of this intervening change in the law, we remand Viridi-ana's withholding of removal claim so the agency can recon-sider it in light of *Wakkary*.

Finally, we note that in Viridiana's petition for review she also challenges the IJ's finding that the two attacks she expe-rienced in Indonesia did not rise to the level of persecution. Because we have concluded that Viridiana's asylum and with-holding claims must be remanded for further consideration, we need not address the issue of past persecution. In any event, on remand, when addressing Viridiana's asylum claim

on the merits, and in reconsidering her claim for withholding of removal, the BIA and/or the IJ may find it necessary or appropriate to revisit the issue of past persecution. We do not foreclose this possibility. In the event the agency again concludes that Viridiana did not suffer past persecution, she may raise the issue in any future petition for review.

Petition GRANTED and REMANDED.